**Ezequiel NAVEDO, Plaintiff,**

**v.**

**Michael. T. MALONEY, et al., Defendants.**

**No. CivA.00–10011–NG.**

United States District Court, D. Massachusetts.

Sept. 28, 2001.

Gary C. Crossen, Foley, Hoag & Elliot, Boston, MA, Ezequiel Navedo, Shirley, MA, Gary C. Crossen, Rubin & Rudman, LLP, Boston, MA, for Plaintiff.

Laura D. Hochman, Nancy Ankers White, Bruce R. Henry, Morrison, Mahony

& Miller, William J. Davenport, Bloom & Buell, Boston, MA, for Defendants.

## MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT

GERTNER, District Judge.

Plaintiff Ezequiel Navedo ("Navedo") filed this action against various officials of the Massachusetts Department of Corrections, a private entity contracted to perform medical services at the prison, and employees (physicians) of that entity. He claims that their refusal to allow him access to a wheelchair and to disabled-accessible facilities during his incarceration at the Massachusetts Correctional Institution at Norfolk ("MCI Norfolk") and at the Massachusetts Correctional Institution at Shirley ("MCI Shirley") deprived him of his civil rights and caused severe and irreparable damage to his left leg.[1]

Navedo alleges that permanent disabilities in his back, hips, and left leg have rendered him wheelchair-bound. However, on his transfer to MCI Norfolk, the defendants denied him permission to use a wheelchair, not because of medical issues, but simply because the prison facilities were not wheelchair-accessible. Defendants also failed to provide him with access to safe showering facilities for over a month. Moreover, the situation was not remedied on Navedo's subsequent transfer to MCI Shirley, a disabled-accessible facility, where Navedo was again denied the use of a wheelchair and an accessible shower. As a result, Navedo alleges, his physical condition was exacerbated: The defendants subjected him to cruel and unusual punishment, deprived him of his civil rights, and caused him emotional as well as physical distress.

The six defendants are: Michael T. Maloney ("Maloney"), Commissioner, Massachusetts Department of Corrections; Timothy Hall ("Hall"), Superintendent, MCI Norfolk, Tempthia Battle ("Battle"), Deputy Superintendent, MCI Norfolk; Correctional Medical Services, Inc. ("CMS"); Joyce Cormo ("Cormo"), Health Services Administrator for CMS at MCI Norfolk; Nawfal Istfan ("Istfan"), a physician employed by CMS and Medical Director of MCI Norfolk; and the Commonwealth of Massachusetts ("Commonwealth"). Two different motions for summary judgment are pending before this Court: one raised by the corrections officials, defendants Maloney, Hall, Battle, and the Commonwealth, and the other by CMS, Cormo, and Istfan. Taken together, the defendants argue that Navedo cannot satisfy the Eighth Amendment standard of deliberate indifference to serious medical need, that at least some of the defendants are entitled to qualified immunity, and that Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131 *et seq.*, is inapplicable due to the nature of Navedo's disability and to the measures taken by the defendants to accommodate him.

For the reasons set forth below, Maloney et al.'s Motion to Dismiss, or, in the Alternative, for Summary Judgment [dock-

1. The Complaint (as amended by the Plaintiff's Opposition to Defendants' Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment) contains seven counts, alleging that: (1) Defendants subjected Navedo to cruel and unusual punishment violative of the Eighth Amendment; (2) Defendants deprived Navedo of his due process rights under the Fourteenth Amendment; (3) Defendants have discriminated against Navedo on the basis of disability, in violation of the A.D.A., 42 U.S.C. §§ 12131 *et seq.;* (4) Defendants (all except the Commonwealth of Massachusetts) deprived Navedo of his civil rights under 42 U.S.C. § 1983; (5) Defendants intentionally inflicted emotional distress on Navedo; (6) Defendants negligently inflicted emotional distress on Navedo; and (7) Defendants breached their fiduciary responsibility to the taxpayers of the Commonwealth of Massachusetts.

et entry # 33] is **DENIED** as to defendant Maloney and **GRANTED** as to defendants Hall and Battle with regard to the Eighth Amendment and § 1983 claims; the A.D.A. claims as against the defendants in their individual capacities are **DISMISSED;** and summary judgment with regard to the remaining A.D.A. claims is **DENIED.** CMS et al.'s Motion for Summary Judgment [docket entry # 44] is **DENIED** as to defendant Istfan, **GRANTED** as to defendant Cormo, and **GRANTED IN PART AND DENIED IN PART** as to defendant CMS.

## I. *FACTS*

As required in considering a motion for summary judgment, I review the facts in the light most favorable to Navedo, the non-moving party. In June of 1993, Navedo sustained serious injuries to his back, hips, and left leg as a result of an auto accident. After medical treatment, Navedo's left leg remained permanently disfigured, and he made regular use of a wheelchair. While the parties dispute the extent of Navedo's injuries over the time covered by the complaint, specifically, and whether he was completely wheelchair-bound throughout, it is a fact that he entered the Massachusetts Correctional Institution at Concord ("MCI Concord") in July of 1998 in a wheelchair, and he retained use of and access to his wheelchair at all times while incarcerated there. Likewise, when Navedo was transferred to the Massachusetts Correctional Institution at Pondville ("MCI Pondville")[2] in November of 1998, he arrived in a wheel-

chair and had access to a wheelchair at all times, even as he was undergoing physical therapy and became able to ambulate only intermittently using a foot brace and a cane.

It is also a fact that when Navedo was transferred to MCI Norfolk in July of 1999, there was a notation on Navedo's Intrasystem Transfer Form that he was "wheelchair-bound."[3] Nevertheless, Navedo claims that he was told—at the Norfolk prison gate—that he would not be permitted to keep his wheelchair because the facility was not wheelchair-accessible. The defendants do not contradict this allegation, by affidavit. Rather they suggest that whatever Navedo was told at the gate, Norfolk did not provide Navedo with a wheelchair because CMS staff concluded that he did not require one.

From July 1999 through April 2000, while Navedo remained at MCI Norfolk, Navedo's condition (as observed and recorded by defendant Istfan, his treating physician) became progressively worse, resulting in diminished motor functioning of his lower extremities; his bladder function also appeared to be deteriorating.[4] Navedo's repeated requests for a wheelchair were turned down,[5] and he did not receive physical therapy at any time while incarcerated at MCI Norfolk.

Shortly after his transfer to MCI Norfolk, Navedo sustained a fall in a bathroom, which he alleges was partially due to the lack of a grab bar or other disability accommodations in the facilities. Several

2. Navedo's CMS Transfer Form to Pondville characterizes him as "wheelchair-bound" (Plaintiff's Exh. A).

3. Verified Complaint, Exhibit I. The CMS Transfer Form to Norfolk characterizes Navedo as "in a wheelchair" and "walks w/limp." However, a CMS Classification Health Status Report from Pondville, dated July 30, 1999, states that he is "ambulatory with a cane"

and notes that he may be sent to "any facility," even though the same form has "Handicapped Accessibility" checked "yes" as a requirement.

4. Istfan Affidavit, ¶ 24.

5. The parties dispute the frequency and nature of these requests.

weeks later, he was moved to a single, disabled-accessible cell in a transitory unit normally used for inmates awaiting a permanent cell assignment; Navedo did not receive access to an accessible unit with a shower until September 12, 1999.

Because there were no permanent cells at Norfolk that provided disabled access, Navedo had to remain in the transitory unit, where inmates retained substantially fewer privileges.[6] This unit was located at the opposite end of the facility from the gym and from most other programs and activities. Navedo's subsequent request for a stand-up locker in his cell (because he could not access his personal storage space due to his disability) was denied, and he was forced to leave a number of personal items on the floor of his cell, resulting in warnings that his cell was not in compliance with institution rules for storage of personal items.

Significantly, on January 27, 2000, the MCI Norfolk Classification Board[7] voted to recommend Navedo's transfer to MCI Shirley, based on a determination that his "current medical issues [ ] can be better dealt with in the proper environment." Defendant Battle promptly approved the transfer on February 1. Defendant Maloney, however, refused to transfer Navedo, claiming that his "medical needs can be met at Norfolk."[8]

Navedo was finally transferred to MCI Shirley in April 2000,[9] where he is presently incarcerated. On April 10, he requested an orthopedic mattress of the same type given to him at MCI Norfolk. Dr. Rencricca, a CMS doctor at Shirley, denied this request one week later, finding no indication in Navedo's record that such a mattress was required. At Shirley, Navedo has been placed in a disabled-accessible cell, but has not been given access to a safe, accessible unit with a shower. He was offered the use of a wheelchair, but one without leg supports; when he objected to the lack of leg supports, he was not provided with an alternative wheelchair.[10] He is currently being treated by a physical therapist at MCI Shirley, and is awaiting treatment by an orthopedic surgeon.

## II. *LEGAL DISCUSSION*

Navedo alleges that the defendants subjected him to cruel and unusual punishment in violation of the Eighth Amendment, deprived him of his civil rights, and discriminated against him on the basis of disability. He argues that the defendants' subjective awareness of his medical condi-

6. *E.g.,* 1 ½ hours tier time per day on the transitory unit versus 7am–10pm daily on the permanent unit, and the availability of cooking facilities for each permanent unit.

7. The Classification Board is a body established pursuant to M.G.L. ch. 127, § 20A to advise the prison superintendent (here, defendant Hall) with regard to prisoners' periodic grading and classification. Classification Boards generally consist of at least three members, including correction officers, prison camp officers, correctional counselors, unit managers, directors of classification, or deputy superintendents.

8. Plaintiff's Opposition to Defendants' Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment at 18 & Exh. M.

9. Plaintiff characterizes this transfer as "inexplicable," Plaintiff's Opposition to Defendants' Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment at 5. Indeed, there are no facts currently in the record that provide any explanation of why the transfer was finally effected.

10. The parties dispute the necessity and medical advisability of a wheelchair with leg supports for Navedo. Navedo claims that he has since offered to try the wheelchair without leg supports, but the medical staff now refuses to give him one, on the grounds that a wheelchair is no longer required. Transcript of Excerpt of Motion Hearing, Testimony of Ezequiel Navedo before Hon. Nancy Gertner, at 13.

tion and of his need for a wheelchair, and their refusal to provide him with more appropriate conditions, amount to deliberate indifference to his serious medical condition, and have caused him severe pain and suffering. Moreover, Navedo claims that his living conditions in the transitory unit at MCI Norfolk (July 1999 to April 2000) deprived him of the enjoyment of programs, activities, benefits, and privileges available to all non-disabled inmates.

The defendants have raised two sets of arguments for summary judgment. Maloney et al. claim that Navedo has made no Eighth Amendment showing that they were deliberately indifferent to his medical needs. Rather, they characterize the situation as a difference of opinion as to the medical necessity of a wheelchair. They point out that Navedo has "received extensive care and treatment for several medical conditions"[11] during the course of his incarceration.

As to Navedo's § 1983 claims, Maloney et al. argue that they cannot be held vicariously liable for the allegedly tortious actions of their subordinates, that they cannot be sued under § 1983 in their official capacities, and that Navedo failed to allege that they were persons acting under color of state law.

With regard to certain of the A.D.A. claims, Maloney et al. take the position that (1) they are protected by qualified immunity, (2) Navedo does not qualify for protection under the A.D.A. because his physical impairments do not substantially limit him in a major life activity, and (3) they did reasonably accommodate his disabilities. They also argue that, in any case, under the Supreme Court's recent decision in *Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001), Title II of the A.D.A. does not validly abrogate state sovereign immunity under the Eleventh Amendment, and is an unconstitutional exercise of Congress's legislative power.

CMS et al., in their motion for summary judgment, argue that: (1) they were not deliberately indifferent to Navedo's medical needs; (2) they cannot be held vicariously liable under § 1983; and (3) to the extent that Navedo's claims sound in malpractice or negligence, they should be transferred to Massachusetts Superior Court for the purposes of convening a medical malpractice tribunal pursuant to M.G.L. ch. 231, § 60B.

With regard to defendants Hall, Battle, and Cormo, I agree that plaintiff has failed to raise a triable question as to their deliberate indifference to his medical needs, and accordingly summary judgment is **GRANTED** in their favor. With regard to defendant CMS, the *entity* is not amenable to suit for damages under § 1983, and any claims against CMS for damages are hereby **DISMISSED**. A suit for injunctive relief is permissible, but only with regard to Navedo's claims based on his current treatment at MCI Shirley, not his past treatment at MCI Norfolk. Accordingly, insofar as Navedo's § 1983 claims against defendant CMS are based on alleged incidents at MCI Norfolk, they are **DISMISSED**; insofar as they rest on his current treatment at Shirley, summary judgment is **DENIED**. However, as to defendants Maloney and Istfan under § 1983, and as to defendant Maloney under the A.D.A., I find that Navedo has raised issues of fact that warrant a jury trial, and summary judgment is **DENIED** on these grounds.

### A. *Summary Judgment Standard*

Fed.R.Civ.P. 56(c) provides, in pertinent part, that a court may grant summary

---

11. Defendants' Motion to Dismiss, or, Alternatively, for Summary Judgment at 9.

judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

In ruling on a summary judgment motion, the Court must view the record and draw inferences in the light most favorable to the non-moving party. *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 486 (1st Cir.1981). "When a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party bears the burden of proof at trial, there can no longer be a genuine issue as to any material fact ... and the moving party is entitled to judgment as a matter of law." *Smith v. Stratus Computer, Inc.*, 40 F.3d 11, 12 (1st Cir.1994).

This Court must, therefore, undertake to determine (1) whether factual disputes exist, (2) whether the factual disputes are genuine (i.e., a reasonable fact-finder could return a verdict for the nonmoving party on the basis of the evidence), and (3) whether any fact genuinely in dispute is material (i.e., such that it might affect the outcome of the suit under the applicable substantive law). *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. *Maloney et al.'s Motion to Dismiss, or, in the Alternative, for Summary Judgment*

#### 1. *Eighth Amendment/42 U.S.C. § 1983*

■ In order to state a claim under § 1983, a plaintiff must allege two elements: 1) that the conduct complained of has been committed under color of state law, and 2) that this conduct worked a denial of rights secured by the Constitution or laws of the United States. *Barre-*

*to–Rivera v. Medina–Vargas*, 168 F.3d 42, 45 (1st Cir.1999). In the present case, there is no real dispute that the defendants were, in fact, acting under color of state law in their capacities as prison officials; Navedo's failure to use the term "color of state law" in the initial complaint is not dispositive of the issue. *See Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (holding that pro se complaint must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief").

■ As to the second prong, denial of rights secured by the Constitution or laws of the United States, the Supreme Court has established that the treatment a prisoner receives in prison and the conditions of his/her confinement are subject to scrutiny under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Mere negligence or medical malpractice on the part of prison doctors or officials, however, is not sufficient to establish an Eighth Amendment violation. The standard is higher: "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106, 97 S.Ct. 285; *see also Farmer*, 511 U.S. at 834, 114 S.Ct. 1970. Plaintiff must prove (1) a serious medical need, and (2) the defendant's purposeful indifference to that need. *Sires v. Berman*, 834 F.2d 9, 12 (1st Cir. 1987).

#### a. *Serious Medical Need*

The First Circuit has defined a "serious medical need" as either one that a physician has diagnosed and deemed to require

treatment, or one that is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Mahan v. Plymouth County House of Corrections,* 64 F.3d 14, 18 (1st Cir.1995) (quoting *Gaudreault v. Municipality of Salem,* 923 F.2d 203, 208 (1st Cir.1990), *cert. denied,* 500 U.S. 956, 111 S.Ct. 2266, 114 L.Ed.2d 718 (1991)).

■ There can be little question that Navedo actually has serious medical needs, which have been diagnosed by doctors on multiple occasions since his accident in 1993. In fact, unlike many prison medical treatment cases, the claim here is not that prison officials somehow ignored a new condition that arose while the plaintiff was incarcerated. Rather, the claim is necessarily stronger. It involves taking away accommodations—a wheelchair, special facilities—that plaintiff plainly needed and had used at other institutions. The only question is one of degree: the extent of Navedo's initial injury, the extent to which he subsequently required a wheelchair with leg supports, and how his needs varied throughout the period of his incarceration. Both sides have introduced substantial evidence on the subject, including Navedo's medical records from both before and during his incarceration and the affidavit of his treating physician, Dr. Istfan. Plainly, this is an issue of material fact, not amenable to resolution on summary judgment.

### b. *Deliberate Indifference*

■ In addressing the question of what qualifies as deliberate indifference, the Supreme Court has held that, in order to be found liable under the Eighth Amendment, a prison official must *know of and disregard* an excessive risk to inmate health or safety. *Farmer,* 511 U.S. at 837, 114 S.Ct. 1970 (emphasis added). In other words, the official must both be aware of facts from which the inference could be

drawn that a substantial risk of serious harm exists, and he must actually draw the inference. *Id.* Moreover, because respondeat superior is not available as a theory of liability under § 1983, *see Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 696 n. 58, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Voutour v. Vitale,* 761 F.2d 812, 819 (1st Cir. 1985), *cert. denied sub nom. Town of Saugus v. Voutour,* 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986), a supervisory official's liability must stem from his or her own actions or omissions, which must be "affirmatively connect[ed] to the subordinate's violative act or omission," and which must themselves rise to the level of deliberate indifference. *See Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 582 (1st Cir.1994) (holding that, even if a supervisor lacks actual knowledge of censurable conduct, he may be liable for the foreseeable consequences of such conduct if (1) he would have known of it but for his deliberate indifference or willful blindness, and (2) he had the power and authority to alleviate it); *Layne v. Vinzant,* 657 F.2d 468, 471 (1st Cir.1981) ("[w]hen a supervisory official is placed on actual notice of a prisoner's need for physical protection or medical care, administrative negligence can rise to the level of deliberate indifference to or reckless disregard for the prisoner's safety"); *see also Kosilek v. Nelson,* No. C.A. 92–12820–MLW, 2000 WL 1346898, at *5 (D.Mass. 2000).

Where a party's mental state is a material aspect of the claim at issue—here, how much defendants Hall, Maloney, and Battle knew of Navedo's medical condition—the law of this Circuit urges some caution in disposing of that claim through summary judgment. *See Stepanischen v. Merchants Despatch Transportation Corp.,* 722 F.2d 922, 928 (1st Cir.1983) (stressing special importance of jury judgments of credibility in cases where the state of mind

of a party is crucial to the outcome of the case); *see also In re Varrasso*, 37 F.3d 760, 764 (1st Cir.1994) ("courts must be exceptionally cautious in granting brevis disposition" in cases where a party's state of mind is in issue); *Broderick v. Roache*, 996 F.2d 1294, 1299 n. 9 (1st Cir.1993); *Sires v. Berman*, 834 F.2d 9, 13 (1st Cir. 1987).

At a minimum, there must be a genuine dispute as to whether Maloney, Hall, and/or Battle knew of Navedo's medical needs *and* knew that the medical care being provided to him was "clearly inadequate" to meet those needs. "The question is, charging [prison officials] with reasonable inquiry, and allowing for reliance on the opinions of the treating doctors, ... how did the overall picture appear? What appeared to lack doing? What could be done?" *Layne*, 657 F.2d at 471–72.

■ First, with respect to Hall and Battle: While it may be that defendants Hall and Battle *could* have done more in terms of procuring treatment for Navedo, this is far short of the standard of "deliberate indifference" to which the Eighth Amendment holds prison officials. Even if I were to assume that Hall and Battle did have full knowledge of Navedo's medical condition (which is unlikely given that they are not doctors themselves, did not stand in a direct supervisory relationship to the medical staff, and the medical reports were themselves conflicting), Navedo has introduced little to no evidence of their *deliberate* indifference to that condition. In fact, what evidence he has introduced tends to point in the opposite direction. For example, it is undisputed that defendant Battle approved the Classification Board's recommendation that Navedo be transferred to MCI Shirley on the grounds that his medical concerns could be better addressed there. Classification Form, attached to Plaintiff's Opposition to Defendant's Motion to Dismiss, or in the Alternative, Mo-

tion for Summary Judgment as Exhibit M ("Classification Form"). As to defendant Hall, the letter he wrote to Navedo only two days after Navedo wrote to him indicates that Hall did respond seriously to Navedo's requests, and that he asked defendant Cormo to "have [Navedo's] medical needs assessed so that the institution can make appropriate accommodations." Letter from Hall to Navedo, Dec. 15, 1999, attached to Plaintiff's Opposition to Defendants CMS, Istfan, and Cormo's Motion for Summary Judgment as Exhibit L ("Hall Letter"). Navedo's transfer to Shirley was recommended promptly on January 27, 2000, and approved by defendant Battle on February 1. Accordingly, I **GRANT** defendants' motion for summary judgment with respect to Hall and Battle.

■ With regard to defendant Maloney, however, the case for "deliberate indifference" is markedly stronger. Despite the Classification Board's recommendation that Navedo be transferred to MCI Shirley "due to his current medical issues that can be better dealt with in the proper environment," and despite defendant Battle's approval of that transfer, defendant Maloney nonetheless denied the transfer, noting that Navedo's "medical needs can be met @ Norfolk." Given the contrary recommendations of the prison's own medical staff and of defendant Battle, and given the evidence plaintiff has introduced as to his own complaints (e.g., his medical records, numerous CMS Sick Call Request Forms, and his own testimony), a triable issue remains with respect to Maloney's deliberate indifference to Navedo's needs.

Moreover, Navedo's claims include not only the denial of medical care to him personally, but Maloney's failure to maintain MCI Norfolk in accordance with federal standards of accessibility for disabled inmates. As the First Circuit has made clear, the statutory duties of the Commis-

sioner of Corrections are to be construed broadly, in accordance with Massachusetts law. *Dimarzo v. Cahill,* 575 F.2d 15, 17 (1st Cir.1978), *cert. denied,* 439 U.S. 927, 99 S.Ct. 312, 58 L.Ed.2d 320 (1978); *see also Layne,* 657 F.2d at 471 n. 3 (noting that in *Dimarzo* "we charged the Commissioner of Corrections with the constructive knowledge of prison-wide conditions which he was statutorily obliged to inspect and remedy"). Thus, in addition to issues with respect to Navedo's transfer, there are triable issues with regard to the degree of accessibility at MCI Norfolk, Maloney's knowledge of these conditions, and what steps, if any, he has taken to remedy what problems there may be.

### 2. *Qualified Immunity*

 Because qualified immunity is an affirmative defense, the burdens of pleading and persuasion rest with the defendant. *DiMarco–Zappa v. Cabanillas,* 238 F.3d 25, 35 (1st Cir.2001); *see also Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Gomez v. Toledo,* 446 U.S. 635, 639, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). The determination of a claim of qualified immunity is "independent of the merit of the underlying constitutional claim." *Cookish v. Powell,* 945 F.2d 441, 443 (1st Cir.1991) (quoting *Morales v. Ramirez,* 906 F.2d 784, 787 (1st Cir.1990)). Thus, even if an official's actions should constitute a clear violation of the plaintiff's constitutional rights, the defendant is entitled to summary judgment based on qualified immunity if it was objectively reasonable, based on clearly established law and in light of the information the officials possessed at the time of his conduct, for him to conclude that the violation was in fact lawful. *Cookish,* 945 F.2d at 443; *Lowinger v. Broderick,* 50 F.3d 61, 65 (1st Cir.1995); *see also Harlow,* 457 U.S. at 818, 102 S.Ct. 2727; *Bilida v. McCleod,* 211 F.3d 166, 174 (1st

Cir.2000); *Buenrostro v. Collazo,* 973 F.2d 39, 42 (1st Cir.1991).

Notwithstanding the usual summary judgment requirement, all facts and reasonable inferences are to be construed in favor of the nonmoving party, the First Circuit has characterized the analysis employed to determine whether an official is entitled to summary judgment on qualified immunity grounds as "quite generous." *Lowinger,* 50 F.3d at 65 (observing that "the qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law"). At the same time, if the plaintiff has introduced evidence competent to substantiate both an infringement of his rights and that those rights were clearly established at the time of infringement, "an inquiring court can then presume that the defendant knew, or should have known, that his conduct was beyond the pale," and summary judgment for the defense is inappropriate. *Buenrostro,* 973 F.2d at 42 & n. 3.

As discussed above, since the Supreme Court has made it clear that the Eighth Amendment protects prisoners from the deliberate denial of necessary care for serious medical conditions, *Farmer,* 511 U.S. at 832, 114 S.Ct. 1970; *Estelle,* 429 U.S. at 106, 97 S.Ct. 285, the second prong—the "clearly established" requirement—has been met. As to the first prong, the question of whether Navedo's Eighth Amendment rights were infringed turns largely on whether it was reasonable for defendant Maloney to take the action he did based on what he knew at the time. If Maloney made an objectively reasonable determination based on what he knew at the time, and did not intentionally keep himself ignorant of other pertinent facts about Navedo's condition, then he would be entitled to qualified immunity.

Strikingly, whereas the usual claim of qualified immunity is raised by an official who relied on the recommendations of subordinates in the exercise of his duties, here, defendant Maloney appears to have done exactly the opposite: He denied Navedo's transfer notwithstanding the recommendations of the Classification Board, the medical staff, and defendant Battle. If indeed Maloney knew that Navedo needed a wheelchair, that Navedo's medical needs could not be met at MCI Norfolk, or that MCI Norfolk failed to comply with federal accessibility standards, and did nothing to remedy the situation, this inaction on his part would be hard to characterize as objectively reasonable. Thus, on the basis of the factual issues presented in the record, I find that defendant Maloney is not entitled to qualified immunity, and **DENY** summary judgment with regard to him.

### 3. *A.D.A.*

#### a. *Sovereign Immunity*

Defendants argue that Congress did not validly abrogate state sovereign immunity in Title II of the A.D.A., which prohibits discrimination against qualified individuals with disabilities in all programs, activities and services of public entities. They conclude that any A.D.A. claims raised here are barred by the Eleventh Amendment. I disagree. As plaintiff rightly points out, the Supreme Court in *Garrett* explicitly declined to extend its holding beyond Title I of the A.D.A. *Bd. of Trustees of the Univ. of Alabama v. Garrett*, 531 U.S. 356, 360, 121 S.Ct. 955, 960 n. 1, 148 L.Ed.2d 866 (2001). (Thus, as one court has observed, "[t]he holding of *Garrett* simply allows states to invoke sovereign immunity when faced with claims for money damages under Title I of the A.D.A." *Doe v. Rowe*, 156 F.Supp.2d 35, 56–57 (D.Me.2001)).

Moreover, the *Garrett* Court was explicit about *why* it declined to reach Title II: The troubling "lack of findings" in the legislative record with regard to discrimination based on disability by state *employers* was not mirrored in other areas, such as public services. *Id.* at 966 & n. 7 (concluding that the "overwhelming" majority of accounts of disability-based discrimination in the legislative record "pertain to alleged discrimination by the States in the provision of public services and public accommodations, which are addressed in Titles II and III of the A.D.A."). Thus, even as it invalidated Title I's abrogation of sovereign immunity, the Supreme Court recognized that Title II rested on a far different base of legislative findings, and declined to include it within the sweep of *Garrett's* holding.

In the absence of a definitive ruling from the Supreme Court, the circuit courts have split on the question of whether the extension of Title II of the A.D.A. to the states is a permissible exercise of Congress's Section 5 power. While the First Circuit has not yet ruled directly on the issue, the court in *Torres v. Puerto Rico Tourism Co.*, 175 F.3d 1, 6 n. 7 (1st Cir. 1999), observed in dicta that "we have considered the issue of Congress's authority sufficiently to conclude that ... we almost certainly would join the majority of courts upholding [Title II of the A.D.A.]." The Seventh Circuit has followed *Alsbrook* and the Eighth Circuit; *see Erickson v. Bd. of Governors of State Colleges and Universities for Northeastern Illinois Univ.*, 207 F.3d 945, 948 (7th Cir.2000) (abrogating *Crawford v. Indiana Dep't of Corrections*, 115 F.3d 481 (7th Cir.1997), on the grounds that the holding in *Crawford* was based on an analogy to the A.D.E.A., which the Supreme Court held to be an unconstitutional exercise of Congress's Section 5 power in *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 120 S.Ct.

631, 145 L.Ed.2d 522 (2000)). The Fifth, Ninth, and Eleventh Circuits have upheld the constitutionality of Title II; *see Dare v. California*, 191 F.3d 1167, 1173 (9th Cir.1999); *Kimel v. Florida Bd. of Regents*, 139 F.3d 1426 (11th Cir.1998), *aff'd on other grounds*, 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000); *Coolbaugh v. Louisiana*, 136 F.3d 430 (5th Cir.), *cert. denied*, 525 U.S. 819, 119 S.Ct. 58, 142 L.Ed.2d 45 (1998); *but see Williamson v. Georgia Dep't of Human Resources*, 150 F.Supp.2d 1375, 1380–81 (S.D.Ga.2001). The Fourth Circuit remains divided on the issue; *compare Brown v. North Carolina Div. of Motor Vehicles*, 166 F.3d 698 (4th Cir.1999) (holding that regulation promulgated under A.D.A. Title II exceeded Congress's Section 5 powers), *with Amos v. Maryland Dep't of Pub. Safety & Correctional Servs.*, 178 F.3d 212 (4th Cir.1999) (holding that application of Title II to state prisons is a constitutional exercise of Congress's Section 5 power). And, in the Second, Third, and Sixth [12] Circuits, where the courts of appeals have not ruled on the issue, numerous decisions at the district court level have sustained Title II's constitutionality; *see, e.g., Garcia v. State Univ. of New York Health Sciences Center at Brooklyn*, No. CV 97–4189(RR), 2000 WL 1469551 (E.D.N.Y.2000); *Thrope v. Ohio*, 19 F.Supp.2d 816 (S.D.Ohio 1998); *Pease v. University of Cincinnati Med. Ctr.*, 6 F.Supp.2d 706 (S.D.Ohio 1998); *Muller v. Costello*, 997 F.Supp. 299 (N.D.N.Y.1998); *Young v. Pennsylvania House of Representatives*, 994 F.Supp. 282 (M.D.Pa.1998); *Niece v. Fitzner*, 941 F.Supp. 1497 (E.D.Mich.1996); *but see Hedgepeth v. Tennessee*, 33 F.Supp.2d 668 (W.D.Tenn. 1998).

Thus, in light of the Supreme Court's reasoning in *Garrett*, and in light of the preponderance of case law in favor of Title II's validity, I decline to substitute my judgment for that of Congress, and **DENY** defendants' motion for summary judgment on this ground.

### b. *Individual Liability, Individual Capacity*

Neither the Supreme Court nor the First Circuit has ruled on whether government officials may be sued directly, in their individual capacities, under Title II of the A.D.A. (In *Bartolomeo v. Plymouth County House of Corrections*, 2000 WL 1164261, *1, 229 F.3d 1133 (1st Cir. Aug. 16, 2000) (unpublished decision), the court did "assume without deciding" that such suits were available.) The two circuits that have addressed the issue—the Seventh and the Eighth—and several district courts have held that such suits are not available. *See, e.g., Walker v. Snyder*, 213 F.3d 344, 346 (7th Cir.2000); *Alsbrook*, 184 F.3d at 1005 n. 8; *Thomas v. Nakatani*, 128 F.Supp.2d 684, 692 (D.Haw.2000); *Calloway v. Boro of Glassboro Dep't of Police*, 89 F.Supp.2d 543, 556 (D.N.J.2000); *Yeskey v. Pennsylvania*, 76 F.Supp.2d 572, 575 (M.D.Pa.1999); *Montez v. Romer*, 32 F.Supp.2d 1235, 1240 (D.Colo.1999); *Smith v. Univ. of the State of New York*, No. 95–CV–0477E(H), 1997 WL 800882, at *8 (W.D.N.Y. Dec. 31, 1997). *But see Niece v. Fitzner*, 922 F.Supp. 1208, 1218–19 (E.D.Mich.1996). The Eighth Circuit's reasoning in *Alsbrook*, which was reflected in many of these decisions, focused on the statutory term "public entity" as defined in 42 U.S.C § 12131(1), which did not seem to

---

12. In *Popovich v. Cuyahoga County Court of Common Pleas*, 227 F.3d 627, 641–42 (6th Cir.2000), the court held that Congress exceeded its § 5 enforcement authority when it abrogated state Eleventh Amendment immunity in Title II of the A.D.A., but that opinion was later vacated when the Sixth Circuit granted a petition for a rehearing en banc. 2000 U.S.App. LEXIS 33978 (6th Cir. Dec. 12, 2000). No published decision had issued on the en banc rehearing as of the date this opinion was filed.

contemplate individual defendants sued in their individual capacities. *Alsbrook,* 184 F.3d at 1005 n. 8; *Yeskey,* 76 F.Supp.2d at 575.

■ 42 U.S.C § 12131(1) defines "public entity" as follows: "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority (as defined in section 502(8) of Title 45)." In light of this statutory language, I agree with the Eighth Circuit and the district courts that suits against government officials in their individual, non-official capacities do not appear to be contemplated by Title II of the A.D.A. Thus, insofar as Navedo's A.D.A. claims have been raised against defendants Maloney, Hall, or Battle in their individual capacities, these claims are **DISMISSED.**

### c. *Individual Liability, Official Capacity*

■ As both sides in this case are aware, the Supreme Court has held that, in the § 1983 context, where a suit is brought against individual public officials in their official capacities, such a suit is effectively to be considered a suit against the officials' office(s). *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *see also Wang v. New Hampshire Bd. of Registration in Medicine,* 55 F.3d 698 (1st Cir. 1995). Applying this rule in the context of A.D.A. Title II, the implication is simply that Navedo has brought his A.D.A. claims against Maloney et al.'s offices, which comports exactly with the "public entity" language of Title II. For claims arising under Section 1983, a suit against the state office itself would be barred on sovereign immunity grounds; this is precisely why Navedo dropped his Section 1983 claim against the Commonwealth. For Title II of the A.D.A., however, the Commonwealth is an appropriate defendant, and Maloney et al.'s motion for summary judgment on this ground is **DENIED.**

### d. *Statement of Claim*

In order to state a claim under Title II of the A.D.A., Navedo must establish that: (1) he is a qualified individual with a disability; (2) he was excluded from participation in a public entity's services, programs, or activities or otherwise discriminated against; and (3) such exclusion or discrimination was by reason of his disability. 42 U.S.C. § 12132; *Parker v. Universidad de Puerto Rico,* 225 F.3d 1, 4 (1st Cir.2000); *cf. Pennsylvania Dep't of Corrections v. Yeskey,* 524 U.S. 206, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998) (holding that Title II of the A.D.A. applies in the prison context). A.D.A. Title II defines "qualified individual with a disability" as an "individual with a disability who, with or without reasonable modifications, ... meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. 12131(2); *Parker,* 225 F.3d at 5.

■ In the present case, Navedo has certainly presented sufficient evidence to survive summary judgment on the grounds of his status as a qualified individual with a disability. He has also alleged, and introduced evidence of, actions by the defendants that, if true, could qualify as disability-based discrimination and/or deprivation with regard to services, programs, or activities. It would not be beyond the realm of reason for a jury to find that Navedo's incarceration in a non-accessible facility, his concomitant differential treatment there, or the refusal of defendants to allow him the use of a wheelchair constitute disability-based discrimination within the meaning of Title II of the A.D.A. Thus, I

**DENY** summary judgment on these grounds.

### C. *CMS et al.'s Motion for Summary Judgment: Eighth Amendment/42 U.S.C. § 1983*

#### 1. *Deliberate Indifference*

##### a. *Dr. Istfan*

Navedo has raised claims against Dr. Istfan both in his capacity as a treating physician and in his capacity as medical director of CMS at MCI Norfolk. Both sets of claims are to be assessed with reference to the standard of deliberate indifference, since, as discussed above, mere negligence or medical malpractice on Istfan's part would not be sufficient to make out an Eighth Amendment claim. *Estelle*, 429 U.S. at 106, 97 S.Ct. 285.

■ Of all of the defendants in this case, defendant Istfan is in the best position to have direct knowledge of Navedo's medical condition. Based on the evidence now before me, there are clear and genuine disputes as to exactly what Istfan knew, and the extent to which Navedo complained to him. The evidence as to whether Navedo in fact requires, or required at different times, a wheelchair, and whether he articulated these requests to defendant Istfan, is conflicting; plaintiff has at least carried his summary judgment burden this far. Given Istfan's position at MCI Norfolk and his examination of Navedo, there appears to be little question that Istfan, in his capacity as director of CMS at MCI Norfolk, could have allowed Navedo the use of a wheelchair if one was warranted, and has consistently maintained that one was not required. While the fact that he "could" have done more, by itself, is far from constituting a valid Eighth Amendment claim for denial of medical care, if Istfan failed to do more with full knowledge that Navedo did in fact require a wheelchair, then this could very well rise to the level of "deliberate indiffer-

ence"—intentional denial of a wheelchair to someone who genuinely needs one could reasonably be viewed as a form of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105, 97 S.Ct. 285. With regard to defendant Istfan, summary judgment is accordingly **DENIED.**

##### b. *Cormo*

■ With regard to defendant Cormo, the picture looks somewhat different. From the contents of the letter defendant Hall wrote to Navedo, it appears that Cormo did have at least some knowledge that the extent of medical care required by Navedo was in dispute, and that she was charged with "hav[ing] Navedo's medical needs assessed so that the institution can make appropriate accommodations." However, even assuming that defendant Cormo did have such knowledge, plaintiff has presented little to no evidence to establish deliberate indifference on her part to his needs. Navedo alleges that Cormo "fail[ed] to act or intervene in [his] medical treatment in light of her awareness of [his] need for medical care." Plaintiff's Opposition to Defendants' Motion for Summary Judgment at 16. However, he presents no evidence to substantiate this allegation; it is entirely unclear in what respect Cormo "failed to act," either directly or in a supervisory capacity. In fact, given the relatively short time span between Hall's letter to Navedo and the recommendation that Navedo be transferred to MCI Shirley, the inference arises at the very least that Cormo did in fact have Navedo's medical records reviewed, as requested, in order to assess whether he should be transferred. Not a doctor herself, Cormo did not examine Navedo, and she certainly cannot be charged with any detailed knowledge of his condition beyond the contents of his medical records and the recommendations of the medical staff, plus any complaints brought to her attention.

In short, with straight respondeat superior liability unavailable under *Monell,* plaintiff has failed at this stage to raise any triable issue as to defendant Cormo's role in his alleged denial of medical care. Defendants' Motion for Summary Judgment as to Defendant Cormo is hereby **GRANTED.**

### 2. *CMS and § 1983*

 Insofar as Navedo is seeking monetary damages from defendant CMS under § 1983, any such claims must be dismissed on jurisdictional grounds. In *Will,* 491 U.S. at 71, 109 S.Ct. 2304, the Supreme Court held that neither states nor state officials acting in their official capacities constitute "persons" within the meaning of § 1983. *See also Johnson v. Rodriguez,* 943 F.2d 104, 108 (1st Cir. 1991), *cert. denied,* 502 U.S. 1063, 112 S.Ct. 948, 117 L.Ed.2d 117 (1992); *Wilson v. Brown,* 889 F.2d 1195, 1197 (1st Cir.1989) (observing that "a penal system is an essential appendage of the state corpus"). Thus, insofar as CMS, the entity, is being sued for damages "in its official capacity," this court lacks jurisdiction over any such claims, and they must be dismissed.[13] Under *Will,* states *may* be sued under § 1983 for injunctive relief only. 491 U.S. at 71 n. 10, 109 S.Ct. 2304. Navedo's theory of CMS's liability rests on two different sets of conduct in two different time periods: the actions of defendant Istfan and the other medical staff at MCI Norfolk, and the continued refusal of the CMS medical staff at MCI Shirley to provide him with safe showering facilities and a wheelchair with leg supports. Since Navedo is no longer at Norfolk, there is no call for prospective relief against CMS in this regard. However, insofar as Navedo's claims rest on his treatment at Shirley, injunctive relief may be appropriate if Navedo can demonstrate that CMS's treatment of him at Shirley has risen, and continues to rise, to the level of "deliberate indifference," as required to make out an Eighth Amendment violation. This is a parallel inquiry to that with regard to defendant Istfan at Norfolk; it implicates questions of what the CMS staff and supervisors have known and understood of Navedo's condition throughout his time at Shirley. These are quintessential issues of fact and mental state, inappropriate for resolution via summary judgment. Accordingly, insofar as Navedo seeks injunctive relief against CMS with regard to his treatment at MCI Shirley, summary judgment is **DENIED.**

### III. *CONCLUSION*

For the foregoing reasons, Maloney et al.'s Motion to Dismiss, or, in the Alternative, for Summary Judgment [docket entry # 33] is **DENIED** as to defendant Maloney and **GRANTED** as to defendants Hall and Battle with regard to the Eighth Amendment and § 1983 claims; the A.D.A. claims as against the defendants in their individual capacities are **DISMISSED;** and summary judgment with regard to the remaining A.D.A. claims is **DENIED.** CMS et al.'s Motion for Summary Judgment [docket entry # 44] is **DENIED** as to defendant Istfan, **GRANTED** as to defendant Cormo, and **GRANTED IN PART AND DENIED IN PART** as to defendant CMS.
**SO ORDERED.**

### ORDER

For the reasons set forth in the accompanying Memorandum and Order, Malo-

13. Even had Navedo attempted to sue CMS for damages in its "individual" capacity, this approach would have been to no avail: The Supreme Court has held that organizations do not qualify as "persons" within the meaning of § 1983. *Costello v. Massachusetts Rehabilitation Comm'n,* 982 F.Supp. 61, 68 (D.Mass. 1997) (citing *Will,* 491 U.S. at 64, 109 S.Ct. 2304).