Cecil BRACE, Administrator
of the Estate of Cynthia
Brace, Plaintiff

v.

Commonwealth of MASSACHUSETTS,
et al., Defendants.

No. 08–CV–30184–MAP.

United States District Court,
D. Massachusetts.

Dec. 10, 2009.

Shawn P. Allyn, Allyn & Ball, P.C., Holyoke, MA, John S. Ferrara, Dalsey, Ferrara & Albano, Springfield, MA, for Plaintiff.

Mary Alys Azzarito, Murphy & Riley, Tremont Street Boston, MA, Edward J. McDonough, Jr., Egan, Flanagan & Cohen, PC, Springfield, MA, Robert J. Murphy, Murphy & Riley PC, Boston, MA, for Defendants.

*MEMORANDUM AND ORDER RE-GARDING DEFENDANT REBEC-CA FREY'S MOTION TO DISMISS (Dkt. No. 15)*

PONSOR, District Judge.

## I. *INTRODUCTION*

Cecil Brace ("Plaintiff"), as the administrator of the estate of Cynthia Brace ("Ms. Brace"), filed suit against the Commonwealth of Massachusetts and a number of individual defendants ("Defendants"), all of whom have some role in providing medical services to inmates at the Hampden County House of Correction in Ludlow, Massachusetts. The complaint includes counts

for negligence and medical malpractice, as well as counts that allege that Defendants deprived Ms. Brace of her constitutional rights by showing deliberate indifference to her medical needs.

According to the complaint, Defendants' failure to provide Ms. Brace with adequate medical care while she was in the custody of the Hampden County Sheriff's Department resulted in substantial pain and suffering and her wrongful death. In the motion currently before this court, one of the individual defendants, Rebecca Frey ("Defendant Frey"), moves to have the counts against her-Count XII, which accuses Defendant Frey of medical negligence, and Count XIII, which alleges a violation of Ms. Brace's federal civil rights-dismissed. For the reasons cited below, Defendant Frey's Motion to Dismiss will be allowed as to Count XII and denied as to Count XIII.

## II. *FACTS*[1]

On August 18, 2005, Ms. Brace was arrested by officers of the Holyoke, Massachusetts Police Department. After being held overnight and then arraigned in the Holyoke District Court the following day, she was ordered detained and remanded to the custody of the Hampden County Sheriff's Department. The Sheriff's Department in turn transported her to the Hampden County House of Corrections in Ludlow, Massachusetts. Ms. Brace was detained as both a pretrial detainee and as a convicted and sentenced prisoner because of an alleged probation violation.

At some point early on the evening of August 19, 2005, Ms. Brace began complaining to medical personnel at the facility's medical unit that she was suffering

---

1. All facts are taken from Plaintiff's Complaint, Dkt. No. 1. As required at this stage of the litigation, this court accepts all of the factual allegations contained in the complaint as true. *LaChapelle v. Berkshire Life Ins. Co.,* 142 F.3d 507, 508 (1st Cir.1998).

from headaches and frequent vomiting that she attributed to her abuse of alcohol and to the fact that she did not have access to the prescription pain medication that she took for knee pain and ulcers. At some point during the evening, she allegedly warned a nurse at the facility that she would harm herself if she did not get her pain medication.

According to the complaint, when Ms. Brace's condition did not improve and she began having trouble speaking, breathing, and concentrating, she was removed from the medical unit and transferred to a segregation unit. Once in the segregation unit, she was strip searched and clothed in a paper gown, and medical personnel ordered that security checks be performed every fifteen minutes until Ms. Brace could be evaluated by the mental health staff. Ms. Brace suffered from diarrhea and vomiting throughout the early morning of August 20, 2005 and soiled a number of paper gowns that had to be replaced. The correction officers at the jail concluded that Ms. Brace was suffering from either alcohol or drug withdrawal and called the medical unit to request that she be seen by a nurse.

At about 9:30 that morning, after at least two more phone calls to the medical unit, Defendant Frey and another clinician came to see Ms. Brace in the segregation unit. The complaint alleges that Ms. Frey observed Ms. Brace sitting on her cell floor in her own urine, feces, and vomit and determined that she was in medical distress. Defendant Frey subsequently called a nurse in the medical department to ask that Ms. Brace be transferred to the medical unit for further examination. The nurse in the medical unit agreed that she should be evaluated, and Ms. Brace was showered and transferred to the medical unit.

According to the complaint, two nurses in the medical unit examined Ms. Brace and attempted to administer anti-nausea and anti-diarrhea medications; however, Ms. Brace was not able to hold any of these medications down and continued to vomit and retch. At some point around 11:00 a.m. on the morning of August 20th, Ms. Brace was placed on a stretcher in the hallway of the medical unit. Approximately twenty minutes later, a physician's assistant who was not involved in Ms. Brace's treatment reported to a nurse that Ms. Brace did not look well. The nurse went out into the hall and found that Ms. Brace was not breathing and had no pulse. Both medical personnel at the facility and the paramedics who responded to the emergency call attempted to resuscitate Ms. Brace, but these efforts were unsuccessful. She was ultimately pronounced dead at Baystate Medical Center in Springfield at 12:32 p.m. on August 20th.

Plaintiff in this action, who is Ms. Brace's surviving spouse and the administrator of her estate, originally filed suit in Hampden County Superior Court in July 2008, alleging that the individual defendants committed medical malpractice and violated Ms. Brace's constitutional rights. The suit was subsequently removed to this court by Defendants in September 2008. Magistrate Judge Kenneth P. Neiman granted Defendants' motion that the case be referred to a Massachusetts state medical malpractice tribunal. The medical malpractice tribunal conducted a hearing on July 31, 2009. On that same day, the tribunal issued a report finding that "as to Rebecca Frey, Clinician, there is not sufficient evidence to raise a legitimate question as to liability that would be appropriate for judicial inquiry." (Report of the Medical Malpractice Tribunal, Dkt. No. 21). That report was subsequently forwarded to this court and recorded on the docket.

On September 17, 2009, Defendant Frey moved to dismiss the counts against her. In her motion to dismiss, Defendant Frey argues that both the medical malpractice and civil rights counts against her, Counts XII and XIII, respectively, should be dismissed by this court because Plaintiff failed to post a bond within thirty days of the medical malpractice tribunal's findings, as required by Mass. Gen. Laws ch. 231, § 60B. Additionally, at oral argument, Defendant Frey's counsel asserted that the § 1983 claim in Count XIII should be dismissed because Plaintiff failed to plead a set of plausible facts that would support a civil rights claim against Defendant Frey under the pleading standards announced in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and *Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

## III. *DISCUSSION*

Under Massachusetts law, every action for medical malpractice, error, or mistake against a medical professional is heard by a tribunal consisting of a single justice of the Superior Court, a physician licensed to practice in the Commonwealth, and a licensed Massachusetts attorney. Mass. Gen. Laws ch. 231, § 60B. That tribunal determines "if the evidence presented if properly substantiated is sufficient to raise a legitimate question of liability appropriate for judicial inquiry or whether the plaintiff's case is merely an unfortunate medical result." *Id.* The tribunal reviews the expert opinions, depositions, hospital records and any other materials submitted by the parties and decides if this evidence, if it were accepted by a jury, would be sufficient to withstand a motion for directed verdict. *Little v. Rosenthal*, 376 Mass. 573, 382 N.E.2d 1037, 1041 (1978). When a medical malpractice claim fails at the tribunal stage, the plaintiff either must post a $6000 bond or face dismissal. Mass

Gen Laws ch. 231, § 60B (If the bond "is not posted within thirty days of the tribunal's finding, the action shall be dismissed.").

### A. *Plaintiff's Medical Negligence Claim Against Defendant Frey*

■ In this case, there is no dispute that Plaintiff did not post the required bond within thirty days, and Plaintiff agrees with Defendant Frey that the medical negligence count against her (Count XII) should be dismissed. Plaintiff argues, however, that the medical malpractice claim should be dismissed *without prejudice* because the tribunal relied on representations by Defendant Frey's attorney that she did not provide medical services to Ms. Brace when it reached its conclusion and because no discovery has yet been done to determine whether Defendant Frey's account of her interactions with Ms. Brace is accurate.

Plaintiff cites no case law to support his argument that the dismissal should be entered without prejudice, and the Massachusetts Supreme Judicial Court (the "SJC") has found this argument unpersuasive in the past. In *Farese v. Connolly*, 422 Mass. 1010, 664 N.E.2d 450 (1996), the SJC held that if a medical tribunal found that there was not sufficient evidence to proceed to trial on a medical malpractice claim, and if the plaintiff failed to post a bond within thirty days, a judgment dismissing the action *with* prejudice was required. *Id.* at 450. According to the court, "[t]he purpose of the medical malpractice tribunal statute would be undercut if a plaintiff were to be allowed to start all over again" after his or her initial medical malpractice suit was dismissed. *Id.* Thus, Plaintiff's argument that the medical malpractice claim against Defendant Frey should be dismissed without prejudice must be rejected.

### B. *Plaintiff's § 1983 Claim Against Defendant Frey*

■ Defendant Frey also moves to dismiss the § 1983 claim against her (Count XIII). In Count XIII, Plaintiff alleges that Defendant Frey violated Ms. Brace's constitutional rights under the Eighth and Fourteenth Amendments by demonstrating deliberate indifference to her medical needs.

In her motion to dismiss, Defendant Frey argues that this claim under § 1983 is wholly based on the medical negligence claim in Count XII and that, because of the tribunal's findings and Plaintiff's failure to post the required bond, it should also be dismissed. Plaintiff rejects Defendant Frey's argument that Count XIII is solely an outgrowth of the medical malpractice claim and contends that the civil rights claim was not before the medical tribunal and that Defendant Frey could still be liable for violating Ms. Brace's constitutional rights, even if she did not act as her medical provider.

Additionally, at oral argument, counsel for Defendant Frey contended that Plaintiff failed to plead a set of plausible facts that would support a § 1983 claim under the pleading standards announced in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and *Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Plaintiff responded by asserting that, even if the court were to apply a heightened pleading standard, this case should proceed to the discovery phase based on the facts alleged in the complaint.

■ In order to state a claim under § 1983, a plaintiff must allege two elements: 1) that the conduct complained of has been committed under color of state law, and 2) that this conduct worked a denial of rights secured by the Constitution or laws of the United States. *Barreto–Rivera v. Medina–Vargas*, 168 F.3d 42, 45 (1st Cir.1999). In the present case, there is no dispute that Defendant Frey was, in fact, acting under color of state law in her capacity as a prison official. As to the second prong, mere medical negligence or medical malpractice by medical personnel in a correctional facility is not sufficient to establish a violation of a plaintiff's constitutional rights actionable under § 1983. *Sires v. Berman*, 834 F.2d 9, 12 (1st Cir. 1987). Rather, for medical treatment in a correctional facility to offend either the Eighth or the Fourteenth Amendments[2] to the Constitution, the care "must involve 'acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.'" *Feeney v. Corr. Med. Servs., Inc.*, 464 F.3d 158, 161 (1st Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 105–06, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)).

Thus, to prove an Eighth or Fourteenth Amendment violation, Plaintiff must prove: (1) that there was a serious medical need; and (2) that the prison official exhibited deliberate indifference to this medical need. *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The First Circuit has defined a "serious medical need" as either one that a physician has diagnosed and deemed to require treatment, or one that is "so obvious that even a lay person would easily

**2.** If Ms. Brace were deemed to be a pretrial detainee, then the Fourteenth Amendment would govern her claim. The Eighth Amendment, on the other hand, would apply if this court were to consider her a convicted inmate because of her alleged probation violation. Her precise status does not make a difference in this court's analysis, however, because the standard applied under either Amendment is the same. *See Ruiz–Rosa v. Rullan*, 485 F.3d 150, 155 (1st Cir.2007).

recognize the necessity for a doctor's attention." *Mahan v. Plymouth County House of Corrections,* 64 F.3d 14, 18 (1st Cir.1995) (quoting *Gaudreault v. Municipality of Salem,* 923 F.2d 203, 208 (1st Cir.1990), *cert. denied,* 500 U.S. 956, 111 S.Ct. 2266, 114 L.Ed.2d 718 (1991)). Deliberate indifference means that a prison official subjectively "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. at 837, 114 S.Ct. 1970.

### 1. The Relationship Between the Medical Negligence Claim and the § 1983 Claim

The First Circuit has yet to determine whether a § 1983 claim to vindicate an inmate's rights under the Eighth or Fourteenth Amendments must be dismissed if a separate, but related, medical malpractice claim is dismissed after a medical tribunal finds that there is insufficient evidence to raise a legitimate question of liability. However, Defendant Frey argues that, given the fact that Plaintiff was not able to substantiate even a mere allegation of malpractice, it is clear that he will not meet the more stringent § 1983 standard and that this claim should therefore be dismissed.

Plaintiff contends, on the other hand, that these are different standards and that, even if the tribunal determined that Defendant Frey was not liable as a medical provider who committed medical negligence, she could be liable merely as a prison official who was deliberately indifferent to the serious medical needs of Ms. Brace. *See Navedo v. Maloney,* 172 F.Supp.2d 276, 285 (D.Mass.2001) (denying summary judgment for a prison official who refused a prisoner's transfer to another facility because there was a genuine issue of material fact as to whether that official was deliberately indifferent to an inmate's serious medical needs). According to Plaintiff, he should be allowed to take discovery on this issue to determine whether there is sufficient evidence to support his § 1983 claim that Defendant Frey could be liable as a prison official acting under color of state law, separate and apart from her role as a medical provider.

In cases discussing the role of the medical malpractice tribunal, the Massachusetts courts have emphasized that the tribunal procedure is appropriate only where there are disputed "issue[s] of medical malpractice, error or mistake." *Leininger v. Franklin Medical Center,* 404 Mass. 245, 534 N.E.2d 1151, 1152 (1989) (holding that claims for civil rights violation and false imprisonment, arising out of civil commitment are not appropriate for tribunal review). In fact, the *Leininger* court stated, "[w]e have discerned a strong legislative intent that the tribunal 'should evaluate only the medical aspects of a malpractice claim.' " *Id.* (quoting from *Salem Orthopedic Surgeons, Inc. v. Quinn,* 377 Mass. 514, 386 N.E.2d 1268 (1979)).

These authorities make it clear that the medical tribunal is only designed to assess the sufficiency of the evidence in treatment-related claims. *Little v. Rosenthal,* 376 Mass. 573, 382 N.E.2d 1037, 1040 (1978). It is for this court to decide whether a claim is medical or non-medical and therefore subject to the purview of the medical tribunal. *See Koltin v. Beth Israel Deaconess Med. Center,* 62 Mass.App. Ct. 920, 817 N.E.2d 809, 811 (2004). At this early stage, given the allegations against Defendant Frey in the complaint, the court must conclude that Plaintiff has a colorable claim under 42 U.S.C. § 1983 and should be allowed to take discovery to determine if there is sufficient evidence that Defendant Frey is liable as a prison

official, regardless of whether she is liable as a medical professional.

### 2. The Sufficiency of Plaintiff's Complaint

■ As noted above, during oral argument on this motion, Defendant Frey's counsel averred that Count XIII should be dismissed because Plaintiff did not plead a set of "plausible facts" that would support this type of § 1983 claim, as *Twombly* and *Iqbal, supra,* may require. In *Twombly,* the Supreme Court held that, when confronted with a motion to dismiss for failure to state a claim in an action brought under § 1 of the Sherman Act, a court must determine whether a plaintiff has pled enough facts to render his or her claims of an anti-competitive conspiracy plausible on their face. *See Twombly,* 550 U.S. at 556, 127 S.Ct. 1955. Properly read, however, the holding of *Twombly* seems limited to highly complex cases—like the antitrust matter before the Court in that case— where a bare bones complaint and the burden of pre-trial discovery might effectively coerce an unwarranted settlement by defendants. *See Smith v. Duffey,* 576 F.3d 336, 340 (7th Cir.2009) (Posner, J., discussing *Twombly* and *Iqbal* ). Unlike the action in *Twombly,* the present case is not complex, and it is highly unlikely that it would place a heavy pretrial discovery burden on Defendant Frey.[3] Thus, it does not seem like the holding in *Twombly* regarding pleading standards in complex litigation would control in this particular case.

In *Iqbal,* however, the Court arguably extended *Twombly's* "plausibility" standard to other cases, even cases in which there was no threat of extensive discovery that might lead to an undeserved settle-

ment. *See Iqbal,* 129 S.Ct. at 1953–54. As the Seventh Circuit recently noted in *Smith,* though, courts should also be careful about reading *Iqbal*—a case that involved its own set of special circumstances—too broadly. *See Smith,* 576 F.3d at 340. The defendants in *Iqbal,* including a number of high-ranking members of the Bush administration, pled an official immunity defense in response to a suit in which the plaintiff alleged that these officials authorized detention and interrogation programs during the immediate aftermath of the attacks on September 11, 2001 that violated the plaintiff's constitutional rights. *Iqbal* 129 S.Ct. at 1942. The Supreme Court specifically noted that even minimal discovery might be too intrusive in cases involving high-ranking officials who plead an immunity defense, since these officials "must be neither deterred nor detracted from the vigorous performance of their duties." *Id.* at 1954. Thus, the heightened "plausibility" pleading standard first articulated in *Twombly* and then re-stated in *Iqbal* might not be as universal as Plaintiff's counsel seemed to contend at oral argument.

Regardless of the actual reach of *Twombly* and *Iqbal,* and even assuming, *arguendo,* that the heightened pleading standard applies, Plaintiff in this case has pled sufficient facts to survive Defendant Frey's motion to dismiss. As to the first element needed to establish a violation of Ms. Brace's rights under the Eighth or Fourteenth Amendments, there is little question that Plaintiff's complaint establishes that Ms. Brace's condition while she was in custody constituted a serious medical need.

Similarly, Plaintiff's complaint contains enough factual detail to plausibly support a

---

**3.** Additionally, at oral argument, counsel for Plaintiff also represented to the court that Plaintiff would not oppose any motion for summary judgment that Defendant Frey

might file if the discovery process fails to produce any evidence that Defendant Frey actually violated Ms. Brace's constitutional rights.

claim that Defendant Frey might have exhibited deliberate indifference to this serious medical need. The complaint alleges that Defendant Frey observed Ms. Brace while she was in obvious medical distress, which would establish that she was subjectively aware of the substantial risk of serious harm. The complaint also avers that Defendant Frey did take the minimal step of making a phone call to the medical unit about Ms. Brace's condition, which is enough to establish that she in fact did actually draw the inference that a risk of harm existed. Given Plaintiff's factual allegations about Defendant Frey's role in the events of August 20, 2005, it is plausible that Plaintiff could establish that Defendant Frey's failure to take any further action could constitute deliberate indifference. The complaint here does not begin and end with a conclusory recitation of the legal elements that must be proved. Rather, Plaintiff has cited to enough specific alleged acts or omissions by Defendant Frey that might support a claim under the Eighth or Fourteenth Amendments, especially given the limited access to information that Plaintiff has had prior to taking discovery in this case.

## IV. *CONCLUSION*

For the foregoing reasons, Defendant Frey's Motion to Dismiss (Dkt. No. 15) is hereby ALLOWED as to Count XII and DENIED as to Count XIII. The clerk will refer this case to the Magistrate Judge for a scheduling conference.

It is So Ordered.