Thomas MITCHELL, Plaintiff

v.

MASSACHUSETTS DEPARTMENT OF CORRECTION, et al, Defendants

No. CIV.A. 01–30066MAP.

United States District Court, D. Massachusetts.

March 8, 2002.

Thomas Mitchell, West Springfield, MA, for Plaintiff.

Richard C. McFarland, Department of Correction, Legal Division, Boston, MA, for Defendants.

*MEMORANDUM AND ORDER RE-GARDING REPORT AND RECOMMENDATION OF FEBRUARY 20, 2002*

(Docket No. 30)

PONSOR, District Judge.

Thomas Mitchell ("plaintiff"), proceeding *pro se,* has brought this action pursuant to Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12112(a)(2), Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), and 42 U.S.C. § 1983. Essentially, he claims that he was denied the opportunity to participate in certain inmate programs during his incarceration in Massachusetts between August of 1996 and July of 2000, based upon the fact that he suffers from diabetes and a heart condition.

Defendants filed a joint motion to dismiss the complaint and their motion, and two motions by the plaintiff, were referred to Magistrate Judge Kenneth P. Neiman for report and recommendation.

The Magistrate Judge recommended that the defendants' Motion to Dismiss be denied "to the limited extent that plaintiff's Title II and Rehab Act claims seek monetary damages from the DOC or Bissonnette and Maloney in their official capacities for sentence-reduction credits which he alleges were improperly denied." In all other respects, he recommended that the motion be allowed. The Magistrate Judge recommended that the plaintiff's two motions be denied.

In response to the Report and Recommendation, the plaintiff filed objections and a Motion for Reconsideration (Docket No. 31). The defendants also file an objection, solely on the question of Eleventh Amendment immunity, citing *Board of Trustees of the University of Alabama v. Garrett,* 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). The defendants argue that Congress lacked the power to abrogate state sovereign immunity under Title II of the ADA.

It is not necessary to repeat the scrupulous work done by Magistrate Judge Neiman in his Report and Recommendation. Upon *de novo* review, this court hereby adopts the Report and Recommendation. The plaintiff's objections are overruled and his Motion for Reconsideration (Docket No. 31) is hereby DENIED. Plaintiff's Motion for Entry of Default and for Dismissal of the Defendants' Motion to Dismiss (Docket No. 17), as well as plaintiff's Motion for Order Granting Benefits (Docket No. 24) are hereby DENIED.

Similarly, the defendants' objection is hereby overruled. The defendants' Motion to Dismiss (Docket No. 10) is hereby ALLOWED, except for the qualification described by Magistrate Judge Neiman in his Report and Recommendation at 21. In adopting the Report and Recommendation, this court acknowledges that a split in the

circuits exists with regard to the applicability of the Supreme Court's *Garrett* decision to Title II of the ADA. For the reasons set forth by Judge Gertner in her decision in *Navedo v. Maloney*, 172 F.Supp.2d 276, 287–88 (D.Mass.2001), this court is persuaded that *Garrett* does not apply to Title II.

The clerk will set this case for a status conference to determine further proceedings.

It is So Ordered.

*REPORT AND RECOMMENDATION WITH REGARD TO DEFENDANTS' MOTION TO DISMISS, (Docket No. 10), PLAINTIFF'S MOTION TO DISMISS DEFENDANTS' MOTION TO DISMISS OR DEFAULT DEFENDANTS (Docket No. 17), and PLAINTIFF'S MOTION FOR AN AWARD OF SENTENCE–REDUCTION CREDITS (Docket No. 24)*

NEIMAN, United States Magistrate Judge.

Thomas Mitchell ("Plaintiff"), proceeding pro se, brings this action seeking an injunction, declaratory relief and damages with regard to alleged violations of Title II of the Americans with Disabilities Act of 1990 ("ADA") (codified at 42 U.S.C. § 12112(a)(2)), section 504 of the Rehabilitation Act of 1973 ("the Rehab Act") (as amended, 29 U.S.C. § 794(a)), and 42 U.S.C. § 1983 ("section 1983"). The gravamen of Plaintiff's complaint is that he was denied the opportunity to participate in certain inmate programs during his incarceration at the North Central Correctional Institute ("NCCI") in Gardner, Massachusetts, between August of 1996 and July of 2000. As a result, Plaintiff claims, he lost out on "good time," sentence-reduction credits and was caused to suffer "emotional stress."

Named as defendants are the Massachusetts Department of Correction ("DOC") and its commissioner as well as the superintendents of both NCCI and the Massachusetts Correctional Institution at Pondville ("MCI–Pondville") where Plaintiff was incarcerated during the latter half of 2000 (collectively "Defendants").[1] They have jointly filed a motion to dismiss Plaintiff's complaint, pursuant to subsections (1) and (6) of Federal Rule of Civil Procedure 12(b), which, along with two motions filed by Plaintiff, has been referred to the court for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B). For the reasons which follow, the court will recommend that Defendants' motion be allowed in all but one limited respect and that Plaintiff's motions each be denied.

I. FACTUAL BACKGROUND

The following background is taken directly from Plaintiff's complaint and, for purposes here, is assumed to be true. *See Kiely v. Raytheon Co.*, 105 F.3d 734, 735 (1st Cir.1997). On August 9, 1996, Plaintiff, a state prisoner, was transferred to NCCI. (Complaint ¶ 48.) While he was there, administrators denied him permission to participate in various work and educational programs, e.g., welding, barbering and culinary classes. (*Id.* ¶¶ 48–50). Apparently because Plaintiff suffers from "diabetes and a heart condition," he was told that, "due to [his] age and medical

---

1. The complaint's caption also lists "John Doe" and "Jane Doe" as "presently unknown employees who should be included as defendants if the need arises." Obviously, Plaintiff will only be allowed to join additional defendants as allowed by law. Plaintiff is also advised that the court "is not obligated to wait indefinitely for [him] to take steps to identify and serve unknown defendants." *Figueroa v. Rivera*, 147 F.3d 77, 83 (1st Cir. 1998) (citation and internal quotation marks omitted).

condition," he could not take part in such programs. (*Id.* ¶¶ 4, 48). Had he successfully participated, Plaintiff claims, he would have been granted "good time" credits which would have effectively reduced his sentence by two and one-half days for every month he was at NCCI. (*Id.* ¶ 51.) In total, Plaintiff calculates, he was denied 255 days of good time credits.

On July 14, 2000, Plaintiff was transferred to a minimum security facility in Bridgewater, Massachusetts. (*Id.* ¶ 52.) On July 28, 2000, Plaintiff was again transferred, this time to MCI–Pondville. (*Id.* ¶ 53.) During his five months at MCI–Pondville, in contrast to his time at NCCI, Plaintiff was allowed to participate in work assignments. (*Id.*)[2]

## II. PROCEDURAL BACKGROUND

On December 28, 2000, Plaintiff was transferred to the Hampden County House of Correction ("HCHC") from where, in April of 2001, he filed this action. Plaintiff's complaint alleges violations of Title II of the ADA, section 504 of the Rehab Act and section 1983. For relief, Plaintiff seeks an injunction granting him 255 days of good time credits for the period of time he resided at NCCI and was "denied" participation in work and educational programs, a declaratory judgment to that effect, damages, costs and fees. (See Complaint ¶ 73.)

On June 18, 2001, three days after their responsive pleading was due, Defendants filed the instant motion to dismiss and Plaintiff thereafter filed a memorandum in opposition. In addition, Plaintiff moved to "dismiss" or "default" Defendants because their motion to dismiss was filed three days late. Plaintiff then moved for an award of sentence-reduction credits. He

recently informed the court that he is no longer in state custody but, rather, residing independently in West Springfield. (See Docket No. 29.)

## III. STANDARDS OF REVIEW

A defendant's motion to dismiss must focus not on "whether [the] plaintiff will ultimately prevail but whether [he] is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Pursuant to Rule 12(b)(6), the court may grant dismissal only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). *Accord Roeder v. Alpha Indus., Inc.*, 814 F.2d 22, 25 (1st Cir.1987). Under Rule 12(b)(1), the plaintiff, the party invoking jurisdiction, has the burden of proof to establish its existence. *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir.1995). In either case, the court must take as true the well-pleaded facts as they appear in the complaint, extending the plaintiff every reasonable inference in his favor. *See Kiely*, 105 F.3d at 735; *Negron–Gaztambide v. Hernandez–Torres*, 35 F.3d 25, 27 (1st Cir.1994). Finally, as applicable here, a court must take special care when viewing a pro se litigant's complaint which, "however inartfully pleaded," is held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). *See Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980); *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

---

**2.** Plaintiff also claims that he was allowed "to participate in community service programs" at MCI–Pondville but, somewhat contradic-

torily, then asserts that administrators there "improperly denied [him] participation in community service programs." (*Id.*)

## IV. DEFENDANTS' MOTION TO DISMISS

Defendants' motion to dismiss tracks the three statutes alleged to have been violated: Title II of the ADA, section 504 of the Rehab Act and section 1983. The court will do likewise and then conclude this section by analyzing Defendants' laches argument and summarizing the relief this court believes may be available.

First, however, the court notes that Plaintiff appears to have abandoned any claim he might have regarding his treatment at MCI–Pondville. As indicated, the complaint makes contradictory assertions with respect to his treatment there. *See* n. 2, supra. More importantly, Plaintiff's prayers for relief seek nothing with respect to MCI–Pondville. Finally, and perhaps most tellingly, Plaintiff's memorandum alleges only that he was denied the opportunity to participate in programs when he was incarcerated at NCCI, not Pondville. (See Pl.'s Brief (Docket No. 23) at 10 ("It is a fact that the gravamen of the plaintiff's claim ... [regards] violations that occurred at NCCI."). See also Defs.' Brief (Docket No. 11) at 1 (describing complaint as targeting only NCCI).) Accordingly, the court will recommend that the superintendent of MCI–Pondville, Paul Blaney, be dismissed from this case.

### A. TITLE II OF THE ADA

"Congress enacted the ADA 'to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.'" *Parker v. Universidad de Puerto Rico*, 225 F.3d 1, 4 (1st Cir.2000) (quoting 42 U.S.C. § 12101(b)(1)). Title II of the ADA, the provision at issue here, "prohibits discrimi-

nation against qualified individuals with disabilities in all programs, activities and services of public entities." *Navedo v. Maloney*, 172 F.Supp.2d 276, 287 (D.Mass. 2001). While efforts have been made to amend Title II (and the Rehab Act) to exclude prisoners from its requirements, *see* 2001 Cong. U.S. § 33, 107th Congress, 1st Session (Jan. 22, 2001), thus far those attempts have been unsuccessful.[3]

Defendants offer four arguments with respect to Plaintiff's Title II claim: (1) Plaintiff failed to exhaust his administrative remedies; (2) state sovereign immunity bars the claim; (3) the individual defendants must be dismissed as there is no individual liability under Title II; and (4) the complaint fails to state a Title II claim upon which relief may be granted. The court will consider each argument in turn.

#### 1. *Administrative Exhaustion*

Defendants first argue that the Title II claim must be dismissed because Plaintiff failed to exhaust his administrative remedies, i.e., he failed to obtain a right to sue letter from the Equal Employment Opportunity Commission and timely file suit thereafter. In the court's opinion, Defendants' argument is wrong.

Every decision unearthed by the court with respect to this issue, including two from this district, holds that administrative exhaustion is not required for a Title II claim. *See Downs v. Massachusetts Bay Transp. Auth.*, 13 F.Supp.2d 130, 134 (D.Mass.1998) (Lasker, J); *Flippin v. Town of Norton*, No. 97–12248, 1999 WL 191695, at *1 (D.Mass. Mar. 26, 1999) (O'Toole, J.).[4] Indeed, the only ADA ex-

---

**3.** The ADA has two other provisions: "Title I ... prohibits discrimination in employment ... [while] Title III prohibits discrimination in access to public accommodations like ho-

tels, restaurants, and theaters." *Parker*, 225 F.3d at 4 (citations omitted).

**4.** *See also Dominguez v. City of Council Bluffs*, 974 F.Supp. 732, 737 (S.D.Iowa 1997); *Cable*

haustion case cited by Defendants, *Chico–Velez v. Roche Products, Inc.*, 139 F.3d 56 (1st Cir.1998), is a Title I case. However, unlike Title I, which adopts the exhaustion requirements found in Title VII of the Civil Rights Act of 1969 (*see* 42 U.S.C. § 12117(a)), Title II follows the administrative procedures of the Rehab Act (*see* 42 U.S.C. § 12133), which has no such prerequisite (*see* 29 U.S.C. § 794(a)). *See Zimmerman v. State of Oregon Dep't of Justice*, 170 F.3d 1169, 1177–78 (9th Cir. 1999). *See also Brennan v. King*, 139 F.3d 258, 268 n. 12 (1st Cir.1998) ("[T]he Rehabilitation Act does not require exhaustion. [It] derives its procedural requirements from Title VI [of the Civil Rights Act], which does not have an exhaustion requirement.").

### 2. *State Sovereign Immunity*

■ In addition, Defendants assert that Congress did not validly abrogate state sovereign immunity in Title II. Relying on *Board of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001)—which held that state sovereign immunity was not validly abrogated in Title I of the ADA—Defendants contend that Plaintiff's Title II claim is likewise barred by the eleventh amendment to the United States Constitution. Once again, the court disagrees.

Recently, District Judge Nancy Gertner described the evolving jurisprudence in the area of Title II abrogation and concluded that Congress validly abrogated state immunity in Title II. *See Navedo*, 172 F.Supp.2d at 287–88. This court fully agrees with her conclusion and will not repeat her analysis here. *See id.* The court, however, makes two additional points. First, just last month, the en banc Sixth Circuit overturned a panel decision, referenced by Judge Gertner, and aligned itself with the majority of jurisdictions which have held that Congress validly abrogated state sovereign immunity with respect to certain Title II claims. *See Popovich v. Cuyahoga County Court of Common Pleas*, 276 F.3d 808 (6th Cir. 2002). *But see Reickenbacker v. Foster*, 274 F.3d 974, 976 (5th Cir.2001) (reaching opposite result). Second, the First Circuit itself recently read *Garrett* as "suggest[ing]" that Title II "might fare differently" than Title I when subjected to a sovereign immunity analysis. *Laro v. New Hampshire*, 259 F.3d 1, 9 n. 6 (1st Cir.2001). This statement is congruous with the First Circuit's dictum observa-

---

*v. Dep't of Developmental Services of California*, 973 F.Supp. 937, 940 (C.D.Cal.1997); *Winfrey v. City of Chicago*, 957 F.Supp. 1014, 1022–23 (N.D.Ill.1997); *Davoll v. Webb*, 943 F.Supp. 1289, 1297 (D.Colo.1996), *aff'd*, 194 F.3d 1116 (10th Cir.1999); *Wagner v. Tex. A & M Univ.*, 939 F.Supp. 1297, 1310 (S.D.Tex. 1996); *Roe v. County Comm'n of Monongalia County*, 926 F.Supp. 74, 77 (N.D.W.Va.1996); *Dertz v. City of Chicago*, 912 F.Supp. 319, 324 (N.D.Ill.1995); *Doe v. County of Milwaukee*, 871 F.Supp. 1072, 1076 (E.D.Wis.1995); *Tyler v. City of Manhattan*, 857 F.Supp. 800, 812 (D.Kan.1994); *Ethridge v. State of Alabama*, 847 F.Supp. 903, 907 (M.D.Ala.1993); *Noland v. Wheatley*, 835 F.Supp. 476, 483 (N.D.Ind. 1993); *Finley v. Giacobbe*, 827 F.Supp. 215, 219 n. 3 (S.D.N.Y.1993); *Petersen v. Univ. of Wisc. Bd. of Regents*, 818 F.Supp. 1276, 1279–80 (W.D.Wis.1993); *Bracciale v. City of Philadelphia*, No. 97–2464, 1997 WL 672263, at *8 (E.D.Pa. Oct. 29, 1997); *Benedum v. Franklin Twp. Recycling Ctr.*, No. 95–1343, 1996 WL 679402, at *5 (W.D.Pa. Sept. 12, 1996); *Silk v. City of Chicago*, No. 95–0143, 1996 WL 312074, at *11 (N.D. Ill. June 7, 1996); *Lundstedt v. City of Miami*, No. 93–1402, 1995 WL 852443, at *17 (S.D.Fla. Oct. 11, 1995); *Gorsline v. Kansas*, No. 93–4254, 1994 WL 129981, at *2 (D.Kan. Mar. 4, 1994); *Bechtel v. East Penn Sch. Dist.*, No. 93–4898, 1994 WL 3396 (E.D.Pa.Jan. 4, 1994); *Bell v. Retirement Bd. of Firemen's Annuity & Benefit Fund of Chicago*, No. 92–5197, 1993 WL 398612, at *4 (N.D.Ill. Oct. 6, 1993). The court credits Plaintiff for revealing the tip of the iceberg by citing *Wagner* in his memorandum of law.

tion, noted by Judge Gertner, that "we almost certainly would join the majority of courts upholding" Title II in the face of a state sovereign immunity challenge. *Torres v. Puerto Rico Tourism Co.*, 175 F.3d 1, 6 n. 7 (1st Cir.1999). *See Navedo*, 172 F.Supp.2d at 287.

### 3. *Individual Liability*

■ Defendants also argue that the two remaining individual defendants—NCCI's superintendent, Lynn Bissonnette ("Bissonnette"), and the DOC's commissioner, Michael Maloney ("Maloney")—are not subject to liability under Title II in their individual capacities. On this score, the court agrees with Defendants.

"Neither the Supreme Court nor the First Circuit has ruled on whether government officials may be sued directly, in their individual capacities, under Title II." *Navedo*, 172 F.Supp.2d at 288. However, the en banc Eighth Circuit, focusing on the statute's term "public entity," 42 U.S.C. § 12131(1), has held that such suits are not available.[5] *See Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n. 8 (8th Cir. 1999), *cert. granted and then dismissed*, 529 U.S. 1001, 120 S.Ct. 1265, 146 L.Ed.2d 215 (2000). Moreover, a host of district judges (including Judge Gertner), and at least one other circuit court, have similarly determined "that suits against government officials in their individual, non-official capacities do not appear to be contemplated by Title II." *Navedo*, 172 F.Supp.2d at 288–89. *See, e.g., Walker v. Snyder*, 213 F.3d 344, 346 (7th Cir.2000), *cert. denied sub nom. United States v. Snyder*, 531 U.S. 1190, 121 S.Ct. 1188, 149 L.Ed.2d 104 (2001); *Thomas v. Nakatani*, 128 F.Supp.2d 684, 692 (D.Haw.2000); *Calloway v. Boro of Glassboro Dep't of Police*, 89 F.Supp.2d 543, 556 (D.N.J.2000); *Yeskey v. Pennsylvania*, 76 F.Supp.2d 572, 575 (M.D.Pa.1999); *Montez v. Romer*, 32 F.Supp.2d 1235, 1240 (D.Colo.1999); *Smith v. Univ. of State of New York*, No. 95–0477E(H), 1997 WL 800882, at *8 (W.D.N.Y. Dec. 31, 1997). *But see Niece v. Fitzner*, 922 F.Supp. 1208, 1218–19 (E.D.Mich.1996). The court agrees with this resounding authority and, therefore, will recommend that Defendants' motion to dismiss be allowed insofar as Plaintiff's Title II claim is brought against Bissonnette and Maloney in their individual capacities.[6]

### 4. *Alleged Failure to State a Claim*

Finally, Defendants argue that Plaintiff has failed to state a Title II claim upon which relief may be granted. For the reasons which follow, the court disagrees.

■ To make out a Title II claim, Plaintiff must establish the following: "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of [his] disability." *Parker*, 225 F.3d at 5 (citing 42 U.S.C. § 12132). The crux

---

5. 42 U.S.C § 12131(1) defines "public entity" as follows: "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority (as defined in section 502(8) of Title 45)."

6. Of course, this recommendation does not apply to the Title II claim insofar as it is brought against the DOC or the individual defendants in their *official* capacities. *See Navedo*, 172 F.Supp.2d at 289 (refusing to dismiss prisoner's Title II claim to extent it targets the DOC or its officers in their official capacities as such a claim "comports exactly with the 'public entity' language of Title II").

of Defendants' argument is that, with respect to the first prong, Plaintiff is not a "qualified individual with a disability." Defendants' argument, in the court's opinion, is misplaced.

A "qualified individual with a disability" is statutorily defined as "an individual with a disability who, with or without reasonable modifications ... meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). A "disability," in turn, is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

Defendants impliedly acknowledge, as they must, that Plaintiff's diabetes and heart condition are "physical ... impairment[s]" and that work and education are "major life activities." See 28 C.F.R. § 35.104 (listing "heart disease" and "diabetes" as physical impairments and "working" and "learning" as major life activities). Still, Defendants contend that the complaint fails to allege that Plaintiff was "substantially limit[ed]." In this vein, they point to Plaintiff's assertion that, while at NCCI, "he participate[d] in some simple sports[,] walked and ran for at least one hour each day" and that, after his transfer to other institutions, he was physically able to take part in work assignments and other programs. (Complaint ¶¶ 49, 52.) Thus, Defendants conclude, Plaintiff had no "disability" as a matter of law.

In the court's view, Defendants miss the central theme of Plaintiff's Title II claim, namely, that Defendants "regarded" him as having an impairment which substantially limits a major life activity, whether or not such limitation actually exists. See 42 U.S.C. § 1201(2)(C). According to the regulations, "[t]he phrase *is regarded as having an impairment*" covers a plaintiff who "[h]as a physical or mental impairment that does not substantially limit major life activities but that is treated by a public entity as constituting such a limitation." 28 C.F.R. § 35.104 (emphasis in original). Clearly, the complaint before the court—which asserts that Plaintiff was denied participation in various NCCI work and educational programs due to his "medical condition"—sufficiently alleges for purposes here that Defendants "regarded" him as disabled.

To be sure, it may be difficult for Plaintiff to ultimately prove that Defendants' perception that he had a "disability" was the cause of his being denied access to certain *educational*, if not work, programs. One part of the complaint, as Defendants point out, avers merely that "[a]cademic programs ... at NCCI ... [were] not available to me as I graduated from High School and the academic programs allowed preparation for a 'GED' only." (Complaint ¶ 49.) Another part of the complaint, however, alleges that Plaintiff could have participated in other "education, training and employment" programs but for Defendants' denial. (See *id.* at 51.) At the very least, Plaintiff has met the minimal pleading requirements of Fed.R.Civ.P. 8(a) with respect to these issues.

B. *THE REHAB ACT*

Defendants make two arguments with respect to Plaintiff's Rehab Act claim, both of which, the court believes, should be rejected. First, in a single sentence, Defendants baldly assert that "[f]or the reasons set out" in their ADA-sovereign immunity argument, the Rehab Act "exceeds Congress' power ... and impinges upon State sovereign immunities under the Eleventh Amendment." (Defs.' Brief at

18.) As indicated, the court believes that Plaintiff's Title II claim is not barred by sovereign immunity.

Second, Defendants contend that Plaintiff has failed to make out a prima facie case of handicap discrimination under the Rehab Act. In pertinent part, the Rehab Act provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of ... his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). According to Defendants, the Rehab Act claim must be dismissed because Plaintiff fails "to show that he was qualified for the work he alleges he was denied and that the denial was due exclusively to discrimination due to his handicap." (Defs.' Brief at 19.)

In the court's view, Defendants' second argument is premature at best. The complaint is peppered with allegations that Plaintiff felt qualified to participate in specific activities at NCCI. (See, e.g., Complaint ¶ 51 ("I could have participated in all of these programs," that is, "Power Tech, Welding, ... Tractor Trailer School[,] ... Culinary Arts, and Barbering school."). See also id. ¶¶ 51 (indicating that Plaintiff "own[s] a trucking company" and has "operated heavy ... and light equipment for more than 40 years") and 52 (noting that Plaintiff "was allowed to participate in the greenhouse program at MCI–Pondville").) More importantly, Plaintiff's Title II claim, as analyzed above, is essentially an allegation that Defendants "regarded" him as having substantially-limiting impairments. The same analysis allows Plaintiff's Rehab Act claim to survive. *See, e.g., Tardie v. Rehabilitation Hosp. of Rhode Island*, 168 F.3d 538, 542 (1st Cir.1999) (" 'Disability' is defined identically under the ADA and the Rehabilitation Act."); 29 C.F.R. § 1614.203(a)(1) (defining "[i]ndividual with handicap(s)" under Rehab Act "as one who: (i)[h]as a physical or mental impairment which substantially limits one or more of such person's major life activities; (ii)[h]as a record of such an impairment; or (iii)[i]s *regarded as having such an impairment* ") (emphasis added).

Even so, the court will recommend that the Rehab Act claim, like the Title II claim, be dismissed insofar as it is brought against Bissonnette and Maloney in their individual capacities. The Rehab Act is limited to claims of disability discrimination with regard to "any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). While "[t]he First Circuit Court of Appeals and the Supreme Court have yet to decide th[e] issue of individual liability[,] ... the majority of circuits that have confronted this issue [have held] that no personal liability can attach to agents and supervisors under ... the Rehabilitation Act." *Castro Ortiz v. Fajardo*, 133 F.Supp.2d 143, 150–51 (D.P.R.2001) (citing cases). In the context of this case, the court agrees with the weight of authority. There is no evidence here that either Bissonnette or Maloney are a "program or activity receiving Federal financial assistance." Therefore, the court suggests that they be dismissed as individuals from Plaintiff's Rehab Act claim.

## C. SECTION 1983

Defendants argue on sovereign immunity grounds that they are not liable under section 1983, either individually or as officials of the state. As described below, the court agrees and, therefore, will recommend that Plaintiff's section 1983 claim be dismissed. Thus, the court finds it unnecessary to address Defendants' alternative argument that the ADA's comprehensive remedial scheme also bars Plaintiff's sec-

tion 1983 claim. *See Meara v. Bennett,* 27 F.Supp.2d 288, 291–92 (D.Mass.1998) (Ponsor, J.) (following, in Title I case, "[t]he weight of authority" which holds "that the ADA provides a comprehensive enforcement mechanism that precludes a § 1983 action").

 With regard to the DOC and the individual defendants in their official capacities, "the Supreme Court has held that, in the [section] 1983 context, where a suit is brought against individual public officials in their official capacities, such a suit is effectively to be considered a suit against the officials' office(s)." *Navedo,* 172 F.Supp.2d at 289 (citing *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)). *See also Wang v. New Hampshire Bd. of Registration in Medicine,* 55 F.3d 698, 700–01 (1st Cir.1995). Such claims against the state office itself, however, are barred on sovereign immunity grounds. *See Navedo,* 172 F.Supp.2d at 289. Thus, insofar as Plaintiff's section 1983 claim is directed either at the DOC or at Bissonnette or Maloney in their official capacities, the court will recommend that it be dismissed. *See also Florida Dep't of State v. Treasure Salvors, Inc.,* 458 U.S. 670, 684, 102 S.Ct. 3304, 73 L.Ed.2d 1057 (1982).

Still, by individually naming Bissonnette and Maloney as defendants, Plaintiff may be seeking to invoke a sovereign immunity exception. The First Circuit recently summarized the parameters of that exception, commonly referred to as the *Ex parte Young* doctrine, as follows:

> As a general matter the several states are immune under the Eleventh Amendment from private suit in the federal courts, absent their consent. Among the exceptions to this rule is the doctrine of *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), which allows a plaintiff to enforce a claim of

> federal right by obtaining injunctive or declaratory relief against a state officer in the officer's official capacity. In *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), the Supreme Court explained that the purpose of this exception is to prevent continuing violations of federal law, but not to remedy past violations. Therefore, an *Ex parte Young* plaintiff may obtain prospective, but not retrospective, relief. *See id.* at 664–65, 94 S.Ct. 1347; *see also Idaho v. Coeur d'Alene Tribe,* 521 U.S. 261, 294, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997) (O'Connor, J., concurring in part and concurring in the judgment) ("[A] *Young* suit is available where a plaintiff alleges an ongoing violation of federal law, and where the relief sought is prospective rather than retrospective."); *id.* at 298, 117 S.Ct. 2028 (Souter, J., dissenting) (observing that, given the disposition of the Justices in that case, "Justice O'Connor's view is the controlling one").

*Greenless v. Almond,* 277 F.3d 601, 606–07 (1st Cir.2002) (footnote omitted).

 Unfortunately for Plaintiff, his section 1983 claim cannot be viewed under the *Ex parte Young* doctrine in that he requests no prospective injunctive relief. Plaintiff's complaint seeks only good-time credits and damages for alleged violations which occurred in the past at NCCI. To be sure, were Plaintiff still in prison the case might have been more amenable to a prospective injunction, e.g., an order applying sentence-reduction credits to his then current period of incarceration. However, by his own admission, Plaintiff is no longer in state custody. Therefore, such injunctive relief is impossible. *See Purvis v. Ponte,* 929 F.2d 822, 825 (1st Cir.1991) (holding that inmate's section 1983 action against prison officials was moot because he no

longer resided at the prison).[7] Accordingly, the court will recommend that Defendants' motion to dismiss be allowed, in toto, with respect to Plaintiff's section 1983 claim.

### D. LACHES

▉▉▉▉ Finally, Defendants argue that all three of Plaintiff's claims are barred by the doctrine of laches. "[L]aches is an affirmative defense that serves as a bar to a claim for equitable relief where a party's delay in bringing suit was (1) unreasonable, and (2) resulted in prejudice to the opposing party." *Murphy v. Timberlane Reg'l Sch. Dist.*, 22 F.3d 1186, 1189 (1st Cir.1994) (citations and internal quotation marks omitted). Because it is an affirmative defense, "a defendant claiming laches has the burden of proving both unreasonableness of the delay and the occurrence of prejudice." *K–Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907, 911 (1st Cir. 1989). In the court's opinion, neither element, as applied here, warrants dismissal of Plaintiff's claims.

▉▉▉ As for the first element, the court cannot say, as a matter of law, that Plaintiff delayed unreasonably in bringing this action. He was transferred from NCCI's custody in July of 2000 and filed suit, from another institution, a mere nine months later. Defendants cite no authority stating that Plaintiff was *required* to bring his concerns to the attention of NCCI officials as they were happening. *See* 103 C.M.R. 411.10(6) (2001) (noting that "inmate *may* submit a written request for reconsideration" of sentence deduction calculation during period of incarceration) (emphasis added).

With regard to prejudice, the second element, Defendants argue that they have lost all opportunity to rectify any alleged infirmity, that the pertinent documents "have long since been destroyed" and that recollections of NCCI staff have "obviously" been affected. (Defs.' Brief at 21.) In the court's estimation, this proffer, set forth only in Defendants' memorandum, is insufficient; there is no evidence at this stage of the proceedings that any necessary document or witness is unavailable. *See Murphy*, 22 F.3d at 1189 (observing "that 'prejudice' showing must be supported by 'substantial evidence' ") (quoting *Hoover v. Dep't of Navy*, 957 F.2d 861, 864 (Fed.Cir.1992)). Moreover, while it is unfortunate that Defendants may have been unaware of—and, therefore, unable to fix—any problem before litigation commenced, this is no different than many other civil cases.

At bottom, given the facts plead in the complaint and the federal rules' relatively liberal pleading standards, the court deems it improvident to dismiss Plaintiff's case on the basis of laches. Defendants have simply not satisfied their burden of demonstrating both unreasonable delay and the occurrence of prejudice.

### E. RELIEF SUMMARY

▉▉▉ For the reasons described, the court believes that any injunctive relief is unwarranted. Similarly, the court believes that declaratory relief is inappropriate as there is "no showing of an ongoing controversy." *Seaver v. Manduca*, 178

---

7. Even assuming Plaintiff was still in state custody at HCHC, Defendants persuasively argue that prospective injunctive relief would not be appropriate since Plaintiff would no longer have been housed at NCCI, the locus of the alleged illegal acts. *See Lopez v. Garriga*, 917 F.2d 63, 67 (1st Cir.1990) ("[A] court does not retain authority to grant an injunction, even though the plaintiff originally had standing to ask for one, if during the course of the proceeding the plaintiff loses his toehold on the standing ladder.").

F.Supp.2d 30, 36 (D.Mass.2002) (Keeton, J.) (noting that declaratory relief in prison cases where there is no ongoing controversy is "particularly inappropriate because of the likelihood of undermining the exercise of administrative discretion of prison officials in ways unforeseeable to th[e] court"). Thus, if adopted, the above recommendation would only allow Plaintiff to maintain this case as a damages action against the DOC or Bissonnette and Maloney in their official capacities for violations of Title II and the Rehab Act, i.e., for the monetary value of sentence-reduction credits which Plaintiff claims were improperly denied.

## V. PLAINTIFF'S MOTIONS

Plaintiff has filed two motions of his own. In one, he contends that, pursuant to Local Rule 5.1(b), Defendants should be "defaulted" or their motion to dismiss itself be "dismissed" since they filed the motion on June 18, 2001, three days late. (See Docket No. 7, wherein the court allowed Defendants' motion to enlarge the time to June 15, 2001 to file a responsive pleading.) In the second motion, Plaintiff seeks an injunction ordering the superintendent of HCHC to grant him sentence-reduction credits.

Plaintiff's first motion can be dealt with in short order. While Defendants should have tried harder to file their motion by June 15, 2001, Plaintiff has alleged no prejudice as a result of this minuscule delay.[8] Indeed, the court resolved any adverse effects of the delay by allowing Plaintiff additional time, up to and including August 15, 2001, to file his opposition. Further, the local rule Plaintiff cites provides no support for the drastic remedy he now seeks. Nor does Plaintiff cite any authority, despite scattered references to

the rules of criminal procedural, for defaulting Defendants for such a minor delay. Therefore, the court will recommend that Plaintiff's motion be denied.

There are a variety of insurmountable problems with Plaintiff's second motion as well. First of all, it is moot. As described, any potential injunctive or declaratory relief is simply unavailable now that Plaintiff is no longer incarcerated, whether at HCHC or elsewhere. In addition, neither HCHC nor its superintendent are defendants. Finally, Plaintiff's motion, to the extent it seeks summary judgment in his favor, a challenging (if not impossible) endeavor in most civil rights cases, is not warranted here given the complaint's other deficiencies. Accordingly, the court will recommend that Plaintiff's second motion be denied.

## VI. CONCLUSION

For the reasons stated, the court recommends that Defendants' motion to dismiss (Docket No. 10) be DENIED to the limited extent that Plaintiff's Title II and Rehab Act claims seek monetary damages from the DOC or Bissonnette and Maloney in their official capacities for sentence-reduction credits which he alleges were improperly denied. In all other respects, the court recommends that Defendants' motion be ALLOWED. In addition, for the reasons stated, the court recommends that Plaintiff's two motions—his motion to dismiss or default (Docket No. 17) and his motion for sentence-reduction credits (Docket No. 24)—each be DENIED.[9]

February 20, 2002.

---

8. The court notes that June 15th was a Friday and Defendants' motion was date-stamped at 10:58 a.m. on Monday, June 18th, the next day the court was open for business.

9. The parties are advised that under the pro-

visions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court within ten (10) days of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Secretary of Health & Human Services*, 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete*, 792 F.2d 4, 6 (1st Cir.1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega*, 678 F.2d 376, 378–379 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir.1980). *See also Thomas v. Arn*, 474 U.S. 140, 154–55, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). A party may respond to another party's objections within ten (10) days after being served with a copy thereof.